SANJAY WADHWA
**Attorney for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
200 Vesey Street
Room 400
New York, New York 10281
(212) 336-0181

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                        :
SECURITIES AND EXCHANGE COMMISSION,    :
                                                                        :
                              Plaintiff,                                :
                                                                        :     COMPLAINT
         -against-                                                      :
                                                                        :     ECF CASE
ANDREW MILLER                                                           :
                                                                        :
                              Defendant.                                :
------------------------------------------------------------------------x

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Andrew Miller ("Miller"), alleges as follows:

## SUMMARY

1. This case concerns insider trading in the securities of Foundry Networks, Inc. ("Foundry") in advance of the July 21, 2008 announcement that Brocade Communications Systems, Inc. ("Brocade") had agreed to purchase Foundry and in advance of Foundry's October 24, 2008 announcement that it was delaying a shareholder vote to approve the acquisition. Based on tips that Miller received from his friend Matthew Teeple ("Teeple"), an analyst at Artis Capital Management, L.P. ("Artis Capital"), a San Francisco-based investment adviser, Miller traded in advance of both of these announcements and generated over $40,000 in illicit gains.

2. As alleged in the Commission's prior action, SEC v. Teeple, et al., 13-cv-2010 (S.D.N.Y.) (VEC) ("SEC v. Teeple"), during the week leading up to the announcement of Foundry's acquisition on July 21, 2008 (the "July 21 Announcement"), Foundry's chief information officer, David Riley ("Riley"), tipped his friend and former colleague, Teeple, about Brocade's impending acquisition of Foundry.  On at least one prior occasion, Teeple had given Riley investment advice and Riley had traded based on such advice.

3. After receiving this material nonpublic information from Riley, Teeple conveyed Riley's information to, among others, his friend, Miller, who then purchased Foundry securities in advance of the July 21 Announcement based on the information he received from Teeple.

4. After the July 21 Announcement, Foundry's stock price shot up to $18.08 per share, an increase of $4.42, or approximately 32 percent, over the previous day's close of $13.66 per share.

5. Riley also provided material nonpublic information to Teeple in advance of Foundry's October 24, 2008 announcement (the "October 24 Announcement") that "recent developments related to the [Brocade] transaction" had caused it to delay its shareholder vote to approve the acquisition.

6. Teeple then conveyed that information to Miller, who, based on the information received from Teeple, executed trades in Foundry securities in advance of the October 24 Announcement.  Following this announcement, Foundry's stock price, which had closed at $17.04 per share the day before, plummeted to a low of $9.65 per share before closing at $12.67 per share.

7. By trading Foundry securities based on the information he received from Teeple, Miller reaped profits and avoided losses of over $40,000.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

8. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)].  The Commission seeks permanent injunctions against defendant Miller, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].  Finally, the Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10. Venue lies in this Court pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)], and Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York, and were effected, directly or indirectly, by making use of means or instrumentalities of transportation or communication in interstate commerce, or the mails, or the facilities of a national securities exchange.  For example, certain of Miller's illegal trades were executed on the New York Stock Exchange in New York, New York and certain of his options trades were executed on the International Securities Exchange in New York, New York.

**STATUTE OF LIMITATIONS**

11. The Commission and defendant Miller have entered into a series of agreements that tolled the applicable statute of limitations in this matter during the period running from June 28, 2013 through July 15, 2015.

**DEFENDANT**

12. **Miller**, age 35, resides in Redwood City, California. Miller is currently a partner and senior account manager at Service by Medallion, Inc., a provider of facilities services to commercial sites. Among other things, Service by Medallion provides janitorial services to several public technology companies with offices in Northern California.

**RELEVANT PERSONS AND ENTITIES**

13. **Teeple,** age 43, resides in San Clemente, California. From 2007 to 2013 he was an analyst at Artis Capital. Prior to joining Artis Capital, Teeple worked at a market research firm that provided investment-related information to mutual funds and hedge funds, including Artis Capital. Before joining the market research firm, Teeple had been a sales professional at multiple technology companies. He met Riley when they both worked at one of these companies. On March 26, 2013, the Commission sued Teeple for insider trading in SEC v. Teeple based on the same conduct as alleged in this complaint. On that same date, the U.S. Attorney's Office for the Southern District of new York unsealed an indictment charging Teeple with conspiracy to commit securities fraud and securities fraud. On May 28, 2014, Teeple pleaded guilty in U.S. v. Teeple, 13-cr-339 (S.D.N.Y.) (VEC), to one count of conspiracy to commit securities fraud (the remaining counts in the indictment were dismissed), and on October 24, 2014, he was sentenced to 60 months imprisonment and ordered to forfeit $553,890 and to pay a fine of $100,000.

14. **Riley,** age 47, resides in San Jose, California. From 2005 until December 2008, when Brocade's acquisition of Foundry was completed, Riley was Foundry's chief information officer and vice president of information systems. Riley is a defendant in SEC v. Teeple and was charged in a parallel criminal case, U.S. v. Riley, 13-cr-339 (S.D.N.Y.) (VEC). In October 2014, a jury found Riley guilty of one count of conspiracy to commit securities fraud and two counts of securities fraud. On April 27, 2015 Riley was sentenced to 78 months imprisonment and ordered to pay a fine of $50,000.

15. **Brocade,** a Delaware corporation headquartered in San Jose, California, is a technology company specializing in data and storage networking products. Brocade's securities are registered with the Commission pursuant to Section 12(g) of the Exchange Act, and its common stock is traded on the NASDAQ National Market under the symbol "BRCD."

16. **Foundry** was a California-based networking hardware company that mainly sold Ethernet switches and routers. Foundry's securities were registered with the Commission pursuant to Section 12(g) of the Exchange Act and, until Brocade finalized its acquisition of Foundry on December 18, 2008, its common stock traded on the NASDAQ National Market under the symbol "FDRY."

## **FACTS**

17. After the close of regular market trading on Monday, July 21, 2008, Brocade announced that it had signed a definitive merger agreement to purchase Foundry for a combination of $18.50 in cash plus 0.0907 shares of Brocade stock for each share of Foundry stock. This combination represented a total acquisition price of $19.25 per share based on Brocade's closing share price on Friday, July 18, 2008. The day after the July 21

Announcement, the price of Foundry stock rose to $18.08 per share, an increase of $4.42 per share, or approximately 32 percent, over the previous day's close of $13.66 per share.

**Trading by Miller in Advance of the July 21 Announcement**

18. Riley, Foundry's chief information officer, was made aware of Brocade's plans to acquire Foundry on or about July 1, 2008, and, during the subsequent three weeks, he was involved in Foundry's internal preparations for the July 21 Announcement.

19. On the morning of July 16, 2008, during a conversation with Teeple, Riley tipped Teeple, his friend and former colleague, about Brocade's impending acquisition of Foundry. Following this conversation, Teeple then directly or indirectly caused Artis Capital to purchase Foundry securities on behalf of its hedge funds in advance of the July 21 Announcement.

20. Approximately two hours after speaking with Riley, Teeple telephoned Miller. Teeple informed Miller that Foundry was going to be acquired soon, and that Miller should buy Foundry securities. About one hour after receiving this information, Miller purchased 450 shares of Foundry stock in his personal account and purchased 850 shares in his mother's account.

**Additional Trading by Miller Concerning the Foundry Acquisition**

21. Following the July 21 Announcement, Riley continued to provide material nonpublic information to Teeple concerning key events leading up to the consummation of Brocade's acquisition of Foundry, which was not fully completed until December 18, 2008.

22. During September, October, and November, as conflicting information was being reported about the likelihood of Brocade completing its proposed acquisition of Foundry, Teeple and Riley remained in frequent communication.

23. As of October 16, 2008, Foundry's per share stock price was approximately $16.50, its shareholders were scheduled to vote to approve the Brocade acquisition on October

24, 2008, and Brocade had recently announced that it had entered into a $1.225 billion secured credit facility to finance a portion of the Foundry acquisition and would be raising up to $400 million in additional financing to fund the acquisition. Unbeknownst to the public, however, Foundry had learned from Brocade in early October 2008, that Brocade was having trouble securing the additional $400 million of financing required to complete the acquisition.

24. On the morning of October 16, 2008, Riley spoke to Teeple and tipped him that Brocade was having trouble completing its acquisition of Foundry.

25. On the evening of October 16, 2008, Teeple spoke to Miller by telephone and the two exchanged several text messages. Early the next morning, October 17, 2008, Miller began selling the Foundry stock that he and his mother held. By the close of regular trading on October 17, Miller had sold a total of 5,600 shares of Foundry stock, which included all of the shares in his mother's account and all but 1,000 of the shares in his account. He sold the remaining 1,000 shares on the next trading day, October 20, 2008. In addition, and also on October 17, 2008, Miller purchased 55 put option contracts[1] with a strike price of $15 and an expiration date of November 2008, betting that Foundry's per share stock price would decrease.

26. Approximately one week later, on October 24, 2008, Foundry announced that the shareholder vote to approve the Brocade acquisition, which was scheduled for later that day, would be delayed until October 29 "given recent developments related to the transaction." Following this announcement, Foundry's stock price, which had closed at $17.04 per share the day before, plummeted to a low of $9.65 per share before closing at $12.67 per share.

---

[1] A put option is a financial contract between two parties that gives the buyer the right, but not the obligation, to sell an agreed quantity of stock during a specified time period for a specified price, known as the strike price. A buyer pays a fee, or premium, to purchase this right.

27. By trading Foundry securities based on the information he received from Teeple, Miller reaped profits and avoided losses of over $40,000.

## CLAIMS FOR RELIEF

### CLAIM I
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

28. The Commission realleges and incorporates by reference paragraphs 1 through 27, as though fully set forth herein.

29. The information that Riley tipped to Teeple was, in each case, material and nonpublic. In addition, the information was, in each case, considered confidential by Foundry, the company that was the source of the information, and Foundry had policies protecting confidential information.

30. Riley learned the material nonpublic Foundry information that he conveyed to Teeple as a result of his service as the chief information officer at Foundry, and Riley knew, recklessly disregarded, or should have known, that he owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to Foundry and/or Foundry's shareholders to keep the information confidential.

31. Riley tipped material nonpublic information to Teeple in breach of the fiduciary duty that Riley owed Foundry and/or Foundry's shareholders, and did so with the expectation of receiving a benefit from doing so.

32. Teeple knew, recklessly disregarded, or should have known, that Riley owed a fiduciary duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

33. Teeple knew, recklessly disregarded, or should have known, that the material information that he received from Riley was disclosed in breach of a fiduciary duty or obligation arising from a similar relationship of trust and confidence.

34. Miller knew, recklessly disregarded, or should have known that the information that he received from Teeple was material and nonpublic, and that such information was conveyed to Teeple in breach of a fiduciary duty or obligation arising from a similar relationship of trust and confidence, and in exchange for a personal benefit.

35. Miller traded Foundry securities while in possession of the material nonpublic Foundry information that he received from Teeple.

36. By virtue of the foregoing, Miller, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly:  (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

37. By virtue of the foregoing, Miller, directly or indirectly, violated, and, unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## CLAIM II
### Violations of Section 17(a) of the Securities Act

38. The Commission realleges and incorporates by reference paragraphs 1 through 27, as though fully set forth herein.

39. By virtue of the foregoing, defendant Miller, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly:  (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business which operate or would operate as a fraud or deceit upon a purchaser.

40. By reason of the conduct described above, Miller, directly or indirectly, violated, and, unless enjoined, will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## **RELIEF SOUGHT**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Permanently restraining and enjoining Miller from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Permanently restraining and enjoining Miller from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)];

**III.**

Ordering Miller to disgorge, with prejudgment interest, all illicit trading profits, other ill-gotten gains received, and/or losses avoided as a result of the conduct alleged in this Complaint;

## IV.

Ordering Miller to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## V.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
June 12, 2015

*Sanjay Wadhwa*
Sanjay Wadhwa
Senior Associate Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-1100
WadhwaS@sec.gov

Of Counsel:

Joseph G. Sansone (Sansonej@sec.gov)
Daniel R. Marcus (MarcusD@sec.gov)